UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA D. SKELLY,<br><br>                          Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION; FEDERAL STUDENT AID COMMISSION; FEDLOAN SERVICING,<br><br>                         Defendants. | Case No.: 19-cv-1812-GPC-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF's MOTION FOR LEAVE TO PROCEED IFP, AND**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL.** |

On September 20, 2019, Plaintiff Marsha D. Skelly ("Plaintiff"), proceeding pro se, filed the instant action against Defendants U.S. Department of Education, Federal Student Aid Commission, and FedLoan Servicing ("Defendants"). Plaintiff seeks relief from further collection of her student loan debt and the return of money deducted from her Social Security Disability Benefits. (ECF No. 1.)[1] On September 20, 2019, Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), (ECF No. 2), and a motion for the appointment of counsel. (ECF No. 3.) For the following reasons, the Court **GRANTS** Plaintiff's motion to proceed IFP, but **DENIES**

---

[1] The instant action repeats claims made by Plaintiff in 2017 that ultimately resulted in the sua sponte dismissal of the action for failure to state a claim. *See Skelly v. United States Dep't of Educ.*, No. 17-cv-1738-MMA, 2017 U.S. Dist. LEXIS 142351 (S.D. Cal. Aug. 31, 2017).

1

the motion for appointment of counsel.

## I. Factual Background

Plaintiff earned a degree in business administration and accounting in 1988. (ECF No. 1 at 2.) Plaintiff incurred $16,000 in student loan debt during her studies. (*Id.*) Plaintiff has been unable to work since 1993 due to physical ailments. (*Id.*) Plaintiff subsequently filed for Chapter 7 Bankruptcy and asserts her debts were discharged in 1994. (*Id.*) Plaintiff is unsure if she was afforded the opportunity to request an adversary hearing during her bankruptcy proceedings.[2] (*Id.*)

In 1997, the Social Security Administration awarded Plaintiff disability benefits. (*Id.*) There was a settlement from which the County of San Diego recovered money Plaintiff owed. (*Id.*) The U.S. Treasury did not challenge the disbursement of the remaining disability settlement funds from Social Security. (*Id.*)

In 2008 and 2013, Plaintiff attempted to discharge her loans due to disability but was denied. (*Id.*) After contacting a U.S. Department of Education ombudsman in 2013, Plaintiff attempted to consolidate her loans. (*Id.*) However, the Federal Student Aid Commission contests that the loans were consolidated, and the loan summary shows two sets of loans. (*Id.*) Plaintiff contends that there is only one set of loans outstanding. (*Id.*) In March of 2017, Plaintiff spoke to a second ombudsman who noted the account was problematic and referred Plaintiff to a third ombudsman without resolution. (*Id.*)

On May 18, 2017, Plaintiff received a letter from the Federal Student Aid Commission. (ECF No. 1-2 at 4–6.) Plaintiff was informed her loans could not have been discharged in bankruptcy without an undue hardship determination from the court and that Plaintiff has not provided evidence of such a ruling. (*Id.* at 4.) The Commission thus concluded Plaintiff's student loan debt was not discharged in bankruptcy.[3] (*Id.*)

---

[2] In Bankruptcy Court, a plaintiff seeking to determine the dischargeability of a debt must request an adversary proceeding. *See* Fed. R. Bankr. P. 7001(6).

[3] Plaintiff interpreted this letter as an instruction to "seek legal action through civil court for a ruling by the court that repayment would constitute an undue hardship." (ECF No. 1 at 2.)

2

Plaintiff asserts her student loan debt, now more than $83,000, is an extreme financial hardship. (ECF No. 1 at 2; ECF No. 1-2 at 3.) Plaintiff notes that she has been subject to U.S. Treasury offsets to her Social Security and IRS refund checks. (ECF No. 1 at 2.) These offsets to Plaintiff's limited income caused her to relocate multiple times to more affordable properties. (*Id.*) During the pendency of these offsets, Plaintiff received Medicaid health benefits and Supplemental Nutrition Assistance Program benefits. (*Id.*)

## II. Whether Plaintiff Has the Ability to Pay Her Filing Fee.

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400. 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if she is granted leave to proceed IFP. *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). "The granting or refusing of permission to proceed [IFP] is a matter committed to the sound discretion of the district court." *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965). To proceed IFP, a plaintiff must submit an affidavit that contains a complete statement of her assets and demonstrates her inability to pay the fee. 28 U.S.C. § 1915(a)(1). The plaintiff need not demonstrate that she is completely destitute. *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948).

Here, Plaintiff declares her current monthly income is insufficient to meet her current expenses. (ECF No. 2.) The Court finds Plaintiff has sufficiently demonstrated her inability to pay the required filing fee pursuant to 28 U.S.C. § 1915(a).

## III. Whether the Complaint States a Claim for Which Relief May Be Granted.

### A. Legal Standard for Court's *Sua Sponte* Review.

When a Plaintiff proceeds IFP, the Court has a *sua sponte* duty to screen the complaint. 28 U.S.C. § 1915(e)(2). If the complaint is "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief" the court must dismiss the action. *See* 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.") "The language of §

3

1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure ["Rule"] 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Dismissal is warranted under Rule 12(b)(6) if the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). A complaint may also be dismissed if it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

On a Rule 12(b)(6) motion, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Furthermore, the court has a duty to liberally construe a pro se plaintiff's pleadings. *Id.* The court, however, may not "supply essential elements of claims that were not initially pled." *See Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Legal Standard for Plaintiff's Claim of Undue Hardship.**

Plaintiff requests relief from the further collection of her student loans, which now exceed $83,000. (ECF No. 1 at 3; ECF No. 1-2 at 3.) Mindful that Plaintiff proceeds pro se, the Court construes Plaintiff's claim of "extreme financial hardship," (ECF No. 1 at 3), as a claim of "undue hardship" pursuant to 11 U.S.C. § 523(a)(8).

Student loans are excepted from discharge in a bankruptcy proceeding "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Thus, to obtain relief from student loans, the debtor must seek a hardship determination through an adversary proceeding. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 263–64 (2010) ("The Federal Rules of Bankruptcy Procedure require bankruptcy courts to make this undue hardship determination in an adversary proceeding"); *Tenn. Student Assistance Corp. v. Hood*, 541

U.S. 440, 450 (2004) ("Unless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt.").

A plaintiff may request a hearing on the dischargeablity by filing a complaint in federal court. *See* Fed. R. Bankr. P. 4007(a), 7001(6). Moreover, because these complaints are not among the dischargeability complaints referenced in 11 U.S.C. § 523(c), such complaints "may be filed at any time." Fed. R. Bankr. P. 4007(b); *see Zygarewicz v. Educ. Credit Mgmt. Corp. (In re Zygarewicz)*, 423 B.R. 909, 913 n.2 (Bankr. E.D. Cal. January 15, 2010) ("The dischargeability of a student loan may be determined at any time and in any court.").

When reviewing such a complaint, the Court must assess if the plaintiff alleges a claim upon which relief can be granted, i.e., that the plaintiff's debt creates an undue hardship within the meaning of 11 U.S.C. § 523(a)(8). "To determine if excepting student loans from discharge will create an undue hardship on a debtor, the Ninth Circuit has adopted the three-part test established by the Second Circuit in *Brunner*." *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir. 2001); *see United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1111-12 (9th Cir. 1998). The debtor must prove "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *In re Rifino*, 245 F.3d at 1087 (quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).

**C. Plaintiff's Complaint Sufficiently Alleges a Claim of Undue Hardship.**

The first prong of the *Rifino* test requires the debtor to prove her current income is insufficient to maintain a minimal standard of living. *In re Rifino*, 245 F.3d at 1087. To meet this requirement the court requires more than temporary financial adversity but stops short of requiring utter hopelessness. *Id.* at 1088. "The proper inquiry is whether it would be 'unconscionable' to require the Debtor to take steps to earn more income or

reduce her expenses." *In re Nascimento*, 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999).

Here, Plaintiff's monthly income is insufficient to meet her current expenses. (ECF No. 2.) Plaintiff's expenses, moreover, include little beyond food, shelter, and healthcare. (ECF No. 2.) Consequently, requiring Plaintiff to pay her loans would deprive her of the ability to meet her basic needs and could be understood as unconscionable. Therefore, plaintiff's complaint, if true, would satisfy the first prong of the *Rifino* test.

The second *Rifino* prong requires "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *In re Rifino*, 245 F.3d at 1087. Plaintiff cannot rely merely on her "current financial situation," and must point to additional circumstances indicating that her inability to pay "cannot reasonably change." *In re Nys*, 446 F.3d 938, 946 n.7 (9th Cir. 2006).

Here, Plaintiff's allegations suggest that her financial difficulty is likely to persist. (Dkt. Nos. 1-2 at 2.) Plaintiff is 66 years old and has suffered from "ill health" since the "early 1990's." (*Id.*) Plaintiff has also been indigent since 1994 and is currently unemployed. (*Id.*) In addition, Plaintiff has had to relocate at least four times – in 1998, 199, 2001, and 2008 – due to her ballooning debt, and has incurred additional moving and legal costs in the process. (*Id.*) Plaintiff thus alleges various additional circumstances – her advanced age, deteriorating health, long-term indigence, and compulsory relocation and legal costs – which together satisfy the second prong of the *Rifino* test.

The third prong of the *Rifino* test requires "that the debtor has made good faith efforts to repay the loans." *In re Rifino*, 245 F.3d at 1087. This prong was implemented as a response to students utilizing the bankruptcy process to avoid repayment of student loans and was thus intended to "forestall students . . . from abusing the bankruptcy system." *In re Pena*, 155 F.3d at 1111 (quoting *In re Brunner*, 46 B.R. 752, 755 (S.D.N.Y. 1985), aff'd sub nom., *Brunner*, 831 F.2d at 395).

Here, Plaintiff's allegations, if true, do not indicate that she is "abusing the bankruptcy system." *In re Pena*, 155 F.3d at 1111. Indeed, Plaintiff affirms that she

maintained contact with her creditors and attempted to implement their recommendations, including an unsuccessful effort to consolidate her loans at the behest of the U.S. Department of Education. (ECF No. 1 at 2.) Plaintiff alleges that she tried to discharge her debt in 2008, and again in 2013, and that she even hired a law firm in Mission Valley, CA to assist her in seeking relief despite her financial limitations, which have since worsened. (*Id.*) In addition, Plaintiff spoke to three separate people at the Department of Education's Ombudsmen, and ultimately filed the instant action to comply with a letter she received from Federal Student Aid Commission. (*Id.*) Therefore, Plaintiff's allegations, if true, would seem to satisfy the third prong of the *Rifino* test.

Having asserted facts to support all three prongs of the *Brunner* test Plaintiff has presented a claim on which relief can be granted. Plaintiff also seeks an order for the reimbursement of $7,056.15 that was involuntarily deducted from Plaintiff's Social Security Disability benefits between 2005 and 2017 to pay her student loans. (ECF No. 1 at 3.) Plaintiff, however, has not offered any claims or causes of action that would permit the Court to grant the requested relief of reimbursement independent of her claim for undue hardship. Consequently, the Court interprets Plaintiff's request for reimbursement as a part of Plaintiff's prayer for relief in her undue hardship claim.

Thus, in sum, Plaintiff's complaint survives initial screening as required in 28 U.S.C. § 1915(e)(2) in that it adequately pleads a claim for a hardship determination pursuant to 11 U.S.C. § 523(a)(8). Plaintiff's motion for IFP is **GRANTED**.

### IV. Appointment of Counsel

Plaintiff requests appointment of counsel to assist in prosecuting this civil action. (ECF No. 3.) District courts have discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel to represent "any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The appointment of counsel requires a finding of "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). To determine if "exceptional circumstances" exist a court must evaluate the petitioners (1) likelihood of success on the merits and (2) ability to

7

19-cv-1812-GPC-BLM

articulate her claims pro se. *Id.* "Neither of these issues is dispositive and both must be viewed before reaching a decision." *Id.* Also, a civil plaintiff must make a reasonably diligent effort to obtain counsel before a court may exercise its discretion under 28 U.S.C. § 1915(e)(1). *Bailey v. Lawford*, 835 F. Supp. 550, 552 (S.D. Cal. 1993).

Although Plaintiff has established her indigence by successfully obtaining IFP status, and she has made a reasonably diligently effort to pursue counsel, she has failed to meet the rigorous standards of exceptional circumstances. The Court is required to assess Plaintiff's likelihood of success on the merits and Plaintiff's ability to articulate her claims pro se. While the court recognizes Plaintiff's cognizable claim for a hardship determination, her claim stems from a 25-year-old debt whose total lifetime may present an obstacle to her success. (ECF No. 1 at 2.) Furthermore, there is no information before the Court to indicate Plaintiff's inability to articulate her claim other than her decision to proceed pro se. Therefore, it is inappropriate for the Court to appoint counsel at this time.

For the foregoing reasons, Plaintiffs motion for appointment of counsel is **DENIED** without prejudice.

## V. Conclusion

The Court finds Plaintiff has demonstrated her inability to pay and may proceed IFP. Plaintiff has raised a cognizable legal claim that she is entitled to an adversarial hearing in which she may argue for the discharge of her student loan debt pursuant to a hardship determination which may be raised at any time and in any court. The Court interprets her request for reimbursement from her garnished Social Security Disability Benefits as part of her prayer for relief on her undue hardship claim. Additionally, Plaintiff fails to meet the high standard for appointment of counsel.

**IT IS SO ORDERED.**

Dated: December 16, 2019

Hon. Gonzalo P. Curiel
United States District Judge